Good morning, Your Honors. My name is Todd Lementhal. I represent Mr. Wilder. The first issue that, and the only issue today that I'm going to speak about because Mr. Wilder concedes the ACC, the second issue, to the government, the first and only issue I'm going to be speaking about is the abdicating of judicial control. And the issue here is whether or not removing a judge's discretion to rule places this case into a structural error category. Kennedy Let me just ask you before we get to that issue. So you're conceding the issue of whether the plea, as reflected in the judgment, was sufficient? Wilder I am. I'm conceding that the sentence imposed by Mr. Wilder under the Armed Career Criminal Act was correct. And under the Taylor analysis, it is, we concede to the government that it is. Kennedy Okay. Counsel, thank you for that. That takes care of one part of the puzzle here. But in this particular case, if we just assume arguendo that Mr. Wilder's Sixth Amendment rights were violated when the jury saw the gun without the approval of the parties, why isn't that error subject to the harmless beyond a reasonable doubt standard under Chapman? Clearly, this had been, the guns had been presented at trial. As I understand it, the judge said he would have let the jury see it. You have a big person, a small person. Isn't that a reasonable thing for the jury to want to look at anyway? Wilder Well, I would agree. And it's a good question. I don't think we even get to that question, but I'll answer that question. What you're saying is, is that we've taken away the discretion of the judge by giving it to a CSO. And I understand that, Counsel. I'm just saying arguendo. Let's just say there's no question your client's Sixth Amendment rights were violated there. But having said that, under Chapman, if there is a showing beyond reasonable doubt that there was no harm that followed from it, then it doesn't, you know, it doesn't change the outcome. So my question to you is, given the nature of this case, the strong evidence that was involved, you have a jury that wants to see these guns. And you've got a very big person and a very small person, and they want to heft the gun. They want to get some sense of it. It's a perfectly reasonable thing for a juror to want to do, isn't it? Well, the note, as you notice, asks for one gun, the .357. Both guns, the small gun, as well as the large gun, went back. And the issue was, was whether or not the female could possess or hold a large .357. So the argument would have been made, and I think it was made after this was come out, was I would have had, the defense counsel argued, I would have argued that the small gun should not have gone back. Whether or not it was prejudicial or not prejudicial, all I know is that once they went back, that's when we had a jury verdict.  Okay. So I don't know how much weight that had because I wasn't in the room, but I can tell you that that must have had a prejudicial effect in that we had a large .357, we had a small gun. But they saw the large .357. They saw both guns. I'm sorry? They saw both guns, right? They saw them in the trial. They did. Now, you're claiming that the small gun going back was somehow affected the outcome of the case? Well, I'm saying, if we're arguendo, is what I've been asked to do. I'm saying we don't even get there because the decision was taken away from the judge. Richard Smith is assuming that that was an error. Assuming it's an error, what – how did this prejudice the case? Well, again, I'll go back to we've got a large – Well, I wasn't in the jury room. I can only speculate that what you have. Well, speculate. Well, and I think I just did. When you've got a large gun and a small gun and they're sitting there weighing them, and first of all, like I said, they never asked for both guns. They asked for one gun. And when you weigh them together, that might have some prejudicial effect. Why? Well, you've got – because the notion of the government was, was that this young woman could not have carried this large gun, this .357 Magnum gun. There's no way she could have possessed it. You're objecting to the fact that it's a small gun. I'm not. I'm objecting that the judge never had the decision to even – to even send it back or whether or not the trial – the trial counsel ever had the chance to object to it. The judge says that he would have – that he would have allowed the jury to have the guns. So what's the problem? Well, the judge said that. But if you – if you read what the judge said, he said, I think that they asked for both guns. When they didn't, they asked for one gun. One juror asked for one gun, the .357. The judge said, I think they asked for both guns. So he was mistaken in what they were actually even asking for. So that's why you're complaining about the fact that they said the small gun, because the judge didn't say he – did the jury hold the large gun or did they hold the .357 or the .25? Well, the CSO got them from the ATF agent and took both guns back to the jury room. So the jury had both guns with them. That's correct. Then what's the problem? Well, I – the problem that I have is you can't even get there. My problem is, is the judge did not – was not – The judge says if the jury had asked me if they could hold the guns, I would have said yes. We would have taken the judge – the jury has seen the guns, they've been properly admitted into evidence, it's clearly relevant. And the – yeah, we've got this dumb move by the CSO and the ATF in running them back there without the judge's permission. But the judge said if they'd asked me, I would have let them have the guns. Well, here's the problem. Okay, here's the problem. I gave my brief this morning to the security officers. They decided that I was correct. They released my client. Now, if going by what you're saying is, is that – what's the problem? Because you would have ruled that way anyway. There's a problem there. The problem is, is we're giving that decision to a CSO, a security officer. That's the problem that I have. If this had been a conscious – if the district judge had said, I'm tired of making rulings today, Mr. CSO, you make the rulings from now on, because I'm just – I've just had enough of this today, this would be a lack of institutional control and would be a problem. This is an inadvertent mistake. It's not like the Riley case where the judge's clerk comes in, says the judge is not here, and plays Al Haig and decides to be in charge. It's not that kind of situation. This is an inadvertent mistake. And the judge says, we shouldn't have done it this way, but now that you've seen them, of course I would have let you see the guns. And I would respectfully disagree. I think this is exactly like Riley, where you've got – in Riley, you've got a law clerk saying, we're going to play the tapes and we're going to – and then the jurors say, this is what we want to hear on the tapes. Here, we've got a CSO saying, here are the guns, and by the way, these are the guns I want you to see, because they asked for one gun, not two. Both guns went back. So the CSO was the decision-maker on which guns went back. Counsel, if you had been – if you had been present when that request came in from the jury, and the judge had been there saying, okay, I'm considering this, it seems to me that there's even less harm if they – if they had only – if the judge had only sent back one gun. It seems to me that that's far more prejudicial to your client than if he sends back both guns, so the jury can say, gosh, these are about equal weight and they're both pretty light, or they could say, gosh, one of these is a whole lot heavier than another one. That's extremely harmful when the government's whole contention is this little girl could not possess such a large gun. Well, now they're weighing them going, she couldn't have. It's heavy. Look at that. This is a light one. Sounds like a perfectly logical inquiry by a jury. I understand that it is. It's just my problem is, is you – I don't believe you can give that decision to a CSO to make – to say, go ahead and put it back in. You don't seem to accept the fact that Judge Smith has said that we'll assume for purposes of the argument that it was a mistake, it was an error, and it was a violation of constitutional rights. Now, the second inquiry, when there's a constitutional violation, is it harmless beyond a reasonable doubt? If it's not, you've established your point that there was a violation, but you don't win the case. In order to win the case, you have to come – get over the issue, too, and stop saying it's a violation. I appreciate that, and the only prejudicial effect that I would see and or note here is – and I understand we have a disagreement – is that we have two guns in there that weren't asked for, the weight was very important to the defense as well as the government to prove up their case. But don't you think the jury would have seen the weight from seeing the larger gun? How much difference did it make? Your real complaint is that they got the smaller gun that they didn't ask for. And how much difference does that make once they see the larger gun and they either say, well, this little lady can carry it or not? I mean, they've seen the guns before. Now, they get to weigh the small one as well as the large one. And isn't the real problem in the large one, not the small one? I believe it's weighing the both of them together. But I would just respond by saying that immediately after they got the guns, a verdict came back. So how much weight was given to the guns? Apparently, enough that a verdict was returned rather quickly. My time is up, I will. Thank you. Thank you. Good morning. Daniel Sheets on behalf of the United States. I do not intend to argue any points about the matter that the defense counsel is just arguing, unless you have any questions for me on that. No. We may not even have any questions at all. Okay. I do want to make one point. Can I ask something other than this issue? I do, because I sat here when you were questioning counsel in the first matter before you. Well, we could use a little help in that case. Excuse me? What? You're not going to say anything currently oriented, are you? No. But the questions you were raising go to the very matter that he conceded here. And I want to point out one case to you. The question was, which is an inherent question in this case for the sentence, is whether a plea to a count conclusively admits the facts in the count. And the Ninth Circuit has a rule on that in the United States versus Harris, which is at 108-Fed-3rd-1107, it's a 1997 decision. What's the site again, counsel? 108-Fed-3rd-1107, and the point side of the page is 1109, it's a 1997 decision. And in that decision, this Court held a guilty plea conclusively proves the factual allegations contained in the indictment. You want to be added as counsel in the first case, because they sent someone out from Washington to be able to answer that question. Well, Your Honor, to be honest with you, I thought about that, because I anticipated that may be a question that should be asked or would be asked in this case. And there's another line of cases. Well, I don't think we should argue that case, because the defense counsel isn't here. Let me, if I may, for this one point, just make this point. This Circuit, in the modified categorical approach. Which case are you arguing this time? Present case. Thank you. I'm only being paid for one. But I want to make this comment. In the modified categorical approach, this Circuit has consistently held that a court has held that the defendant assented to the facts that would establish a qualifying offense. I'm pleased that that has ever occurred. In this case, no, that it has consistently held anything. But this Court has then held that the combination of the charging document and the judgment and conviction are sufficient to establish that the defendant assented to the facts that would establish a qualifying offense. Inherent. You say this is not an issue in this case? That's the issue that's been conceded by Mr. Leventhal. Yes. But it reinforces what the point I'm making to you that you're interested in is you're arguing the last case of the day, aren't you? You know what I'm going to do? I thought it would be helpful to give you some insight and ask a question, which is inherent in this case. But that one's been conceded by Mr. Leventhal, so it's no longer an issue. That's correct. All right. Have a nice time on the way back to Las Vegas. Thank you, counsel. The case just argued will be submitted. The Court will take a brief morning recess.
judges: Reinhardt, Bybee, M. Smith